Michael R. GILBERT

v.

Violet M. CLICHE.

Supreme Judicial Court of Maine.

Nov. 4, 1977.

Alan C. Sherman, Waterville, for plaintiff.

Marden, Dubord, Bernier & Chandler by Albert L. Bernier, Waterville, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

WERNICK, Justice.

Plaintiff Michael R. Gilbert appeals from a Superior Court (Kennebec County) judgment for defendant, Violet M. Cliche, entered pursuant to an order of the presiding Justice requiring entry of such judgment notwithstanding a jury verdict in favor of the plaintiff.

We sustain the appeal and remand the case to the Superior Court for further proceedings consistent with this opinion.

Plaintiff commenced a civil action against the defendant (plaintiff's mother) in the Superior Court on April 2, 1975. In a first of two counts the complaint alleged that plaintiff had made repairs and improvements to real property owned by defendant in reliance upon defendant's oral promise to convey it to plaintiff at one-half its appraised value "at a date sometime in the future." Plaintiff claimed that defendant's subsequent refusal to convey the property or to pay plaintiff for the repairs and improvements was a breach of the oral contract. The second count alleged defendant had refused to convey the property to defendant at any price and asked specific performance of the oral contract to convey.

In her answer defendant asserted that her oral promise to sell was not enforceable as a contract, and also that the repairs made by her son were not improvements for which he was entitled to reimbursement. By a counterclaim defendant claimed compensation for rent, taxes and insurance, allegedly owed her by plaintiff in accordance with the terms of a written lease, as well as for damages caused by plaintiff to the real estate and the equipment on it.[1]

In the course of pre-trial proceedings, count two of the complaint was dismissed by agreement. As to count one, the pre-trial order defined the issues to be tried as follows:

"If the Plaintiff proves that he reasonably believed that there was a promise to convey in the future as aforesaid and that the Defendant knew that he made improvements which went beyond what was considered repairs under the rental agreement upon the belief that the agreement to convey in the future was valid and that he would not have otherwise made such 'improvements,' then, on the theory of estoppel or acquiescence or unjust enrichment the Plaintiff would be entitled to recover the increase in the fair market value of the property. Whatever credits which may be shown to offset the unjust enrichment may be adduced at trial. Defendant contends that work done on the property constituted repairs under the rental agreement; and, further, that there was no such promise to convey. The sole question in this case will ultimately be whether or not Plaintiff is entitled to recover the amount to which the Defendant was unjustly enriched, less any credits to which she may be entitled."

1. The counterclaim was subsequently dismissed.

A jury trial was held limited to a determination of defendant's liability under the issues thus framed. At the conclusion of the evidence, defendant moved that a verdict be directed in her favor. Without ruling on this motion, the presiding Justice submitted the case to the jury (Rule 50(b) M.R.Civ.P.). The jury returned a verdict, in the form of an answer to a special interrogatory, favoring the plaintiff.[2]

Immediately thereafter, without defendant's having filed a motion for judgment notwithstanding the verdict, the presiding Justice acted as follows. He first stated:

"The record may show that after the jury has returned an answer to an interrogatory put to it on the issue of liability, counsel are in chambers with the Court, and it is the *Court's duty now to rule on the Defendant's motion for a directed verdict in favor of the Defendant. That was the motion which the Court took under advisement at the conclusion of all of the evidence* and prior to the case being submitted to the jury upon the issue of liability." (emphasis supplied)

Explaining his reasons, the presiding Justice then ruled:

". . . the motion for a directed verdict in favor of the Defendant is granted, and the Court will order judgment accordingly."

The above-described actions of the presiding Justice raise a threshold procedural question the answer to which becomes dispositive of this appeal.

The presiding Justice believed, as is evident from his remarks, that since he had submitted the case to the jury without ruling on defendant's motion for a directed verdict in her favor, *that motion* remained open and in need of being ruled upon *as such,* notwithstanding the supervention of a jury verdict deciding in favor of the plaintiff.

This was an erroneous view. It overlooked that Rule 50(b) M.R.Civ.P. plainly requires, in addition to the pre-verdict motion for directed verdict, that a post-verdict motion be filed invoking the power of the Court to order entry of judgment notwithstanding the verdict returned by the jury.

■ Even though, here, the presiding Justice acted to order entry of a judgment for the defendant before judgment had been entered on the jury verdict favoring plaintiff, Rule 50(b) was nevertheless applicable. The language in the second sentence of Rule 50(b), "[n]ot later than 10 days after entry of judgment . . ." and "move to have the verdict and any judgment entered thereon set aside . . ." does not mean that Rule 50(b) is in play only after, not before, the entry of judgment on the verdict of a jury. In the "10 days" clause, "entry of judgment" does not connote a condition of the authority of the Court to act but is merely a reference point by which a maximum time limitation is prescribed for the filing of the requisite post-verdict motion for judgment n. o. v. by a party against whom an adverse jury verdict has been returned. *Chopping v. First National Bank of Lander,* 419 P.2d 710 (Wyo.1966). See also: 5A Moore's Federal Practice, ¶ 50.01, at 2311, 2312 (2d. ed. 19) (discussing the 1963 amendment to Fed.R.Civ.P. 50(b) which struck the phrase, "[w]ithin 10 days after the reception of a verdict . . .", and substituted the words, "[n]ot later than 10 days after the entry of judgment . . .", a change which the appended Committee Note explains ". . . sets the time limit for making the motion for judgment n. o. v." in a manner ". . . consistent with that contained in Rule 59(b) . . . and Rule 52(b) . . .") In similar vein, the words referring to the invoking of the Court's power to set aside ". . . any judgment entered . . ." on the verdict of the jury do not signify that such a judgment must already have been entered but refer only to the contingency that there

**2.** Voting 5 to 1, the jury answered in the affirmative the special interrogatory: "Is the Plaintiff, MICHAEL R. GILBERT, entitled to be compensated by the Defendant, VIOLET M. CLICHE, for the value of the improvements which he caused to be made to the Defendant's real estate?

may have been a judgment entered on the verdict; in short, in this context, "any judgment" has the same meaning as if the text read "the judgment, if any."

■ In light of the conceptual anomaly which would be involved if a jury is first allowed to return such verdict as it may see fit and thereafter is "directed" by the presiding Justice to return a contrary verdict, Rule 50(b), in effect, eliminates the "motion for a directed verdict" as the continuingly operative mechanism by which the Court may act to produce a judgment notwithstanding a verdict returned by a jury. The Rule provides:

"Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination *of the legal questions raised* by the motion." (emphasis supplied)

Thus, Rule 50(b) does not preserve the motion for a directed verdict *as such* to be ruled upon after submission of the case to a jury; rather, it preserves for "later determination" *only* the "legal questions raised by . . ." it.

■ In relation to such "later determination" of the legal questions thus preserved, Rule 50(b) delineates the specific procedure to be followed. It first addresses the alternative in which, after submission, the jury has returned a verdict contrary to the interests of the party who had moved for a directed verdict in his favor. In such instance said party

". . . <u>may move</u> to have the <u>verdict</u> and any judgment entered thereon <u>set aside</u> and to have judgment entered <u>in accordance with his motion for a directed verdict;</u> . . . ." (emphasis supplied)

It is plain from the words underscored that the presiding Justice is not to act *on* the motion for a directed verdict *as such*. Rule 50(b) requires a separate motion to be *forthcoming* by which the Court is asked, first, to eliminate the verdict returned by the jury, by setting it aside, and thereafter, the jury verdict having been removed, to

order entry of a judgment *in accordance with*—but not on, or in consequence of, granting—the previously filed, but unruled on, motion for a directed verdict.

As his options in ruling upon such separate motion required to be filed after a verdict has been returned, the presiding Justice may, under Rule 50(b),

". . . allow the judgment [which may have been entered on the verdict] to stand or . . . reopen the judgment and either order a new trial or direct the entry of judgment <u>as if</u> the requested verdict had been directed."

Thus, again, as shown by the underscored language, Rule 50(b) reveals that, after the return of a verdict, the presiding Justice is not to act *on* the motion for a directed verdict *as such*; he acts on the separate motion required to be filed after the verdict has been returned and "[n]ot later than 10 days after entry of judgment . . . ." That this is correct is further plain because (1) the new trial option given the presiding Justice would be a conceptually inappropriate response to a motion that the Court direct a jury verdict, and (2) the alternative option authorized by Rule 50(b)—entry of judgment contrary to the jury verdict—is described as resulting from a determination of the legal issues involved *"as if"* (emphasis supplied) a verdict had been directed at the conclusion of all the evidence and not as produced by an *actual* ruling *on* the motion for such directed verdict.

Similarly, in addressing the second alternative situation, i. e., that in which, after submission, "a verdict was not returned", Rule 50(b) again expressly requires a separate motion to be filed additional to the motion for a directed verdict made at the conclusion of all the evidence—this motion asking the Court to

". . . [order] judgment . . . in accordance with . . . . [the previously filed] motion for a directed verdict."

Further, Rule 50(b) prescribes as the options available to the Court in response to this separate motion either (1) entry of judgment "*as if* the requested verdict had

been directed" (emphasis supplied) or (2) a new trial.

■ The inescapably plain thrust of Rule 50(b) is, therefore, that once the presiding Justice has submitted the case to the jury, a motion for a directed verdict filed at the conclusion of all the evidence, although a *necessary* condition of the presiding Justice's subsequent ordering of a judgment notwithstanding the verdict of the jury, is not a *sufficient* condition thereof. It is further requisite that the party who made the motion for a directed verdict make a separate, additional motion which, in the situation where the jury has returned a verdict contrary to that requested in the motion for a directed verdict, asks the Court to set aside such contrary verdict and to direct entry of judgment in accordance with the result requested in the motion for a directed verdict. Because Rule 50(b) requires such separate additional motion it can further prescribe, without conceptual incongruity, that the response of the presiding Justice may be an order for a new trial rather than the entry of a judgment contrary to the jury's verdict.

Indeed, it was precisely to preserve fair opportunity for *each* party to be granted a new trial that the Supreme Court of the United States stated in dictum in *Cone v. West Virginia Pulp & Paper Co.,* 330 U.S. 212, 67 S.Ct. 752, 91 L.Ed. 849 (1947) that Federal Rule 50(b)—of which Rule 50(b) M.R.Civ.P. is a counterpart—requires a separate motion, additional to the motion for a directed verdict, as a precondition of the Court's acting to set aside a verdict of the jury and order entry of a judgment contrary to the verdict the jury returned.

The United States Supreme Court reasserted the point in *Johnson v. New York, New Haven & Hartford Railroad Company,* 344 U.S. 48, 73 S.Ct. 125, 97 L.Ed. 77 (1952), with the further comment that Federal Rule 50(b)

". . . rejected the New York procedure . . . which permitted judgment to be set aside even though no motion to do so had been filed after verdict. Instead . . . [Rule 50(b)] approached more closely the Pennsylvania rule, . . . under which judgments contrary to verdicts would not be awarded in the absence of specific timely motions for them." (pp. 52, 53, 73 S.Ct. p. 128)

In *Johnson,* the Supreme Court also stressed that the

". . . requirement of a timely application for judgment after verdict is not an idle motion. . . . [The] verdict solves factual questions against the post-verdict movant and thus emphasizes the importance of the legal issues. The movant can also ask for a new trial either for errors of law or on discretionary grounds. The requirement for timely motion after verdict is thus an essential part of the rule, firmly grounded in principles of fairness." (p. 53, 73 S.Ct. p. 128)

See also: *Cargill, Inc. v. Weston,* 520 F.2d 669 (8th Cir. 1975).

■ We take the same view of Rule 50(b) M.R.Civ.P. as patterned upon Federal Rule 50(b). We decide that in the present instance the presiding Justice acted in violation of Rule 50(b) by ordering judgment for the defendant in the face of a verdict in favor of plaintiff without having before him a separate post-verdict motion by defendant asking that the jury verdict be set aside. The error was prejudicial to plaintiff since, by acting as he did immediately after the verdict of the jury was returned, the presiding Justice impaired procedural rights guaranteed to plaintiff under Rule 50(b); the presiding Justice deprived plaintiff of reasonable opportunity to urge that the presiding Justice grant a new trial rather than foreclose the merits against plaintiff by a judgment for the defendant.[3]

---

3. Because the presiding Justice's violation of Rule 50(b) was here prejudicial to plaintiff, we need not now decide whether the Rule 50(b) requirement of a motion for a judgment notwithstanding the verdict—as a precondition of

the Court's ordering an entry of such judgment—is a limitation of the Court's power or is merely a directory procedural provision. See: *Shaw v. Hinds Lumber Company,* 249 F.2d 434, 438, 439 (7th Cir. 1957); *First Safe Deposit*

The appeal must be sustained, the judgment for defendant set aside and the case remanded for further proceedings in light of this opinion.[4]

The entry is:

Appeal sustained; the judgment for defendant is set aside; the case is remanded to the Superior Court for further proceedings consistent with the opinion herein.

NICHOLS, J., did not sit.

DUFRESNE, A. R. J., sat at oral argument as Chief Justice, but retired prior to the preparation of the opinion. He has joined the opinion as Active Retired Justice.

All Justices concurring.

National Bank v. Western Union Telegraph Company, 337 F.2d 743 (1st Cir. 1964)

4. In the course of the further proceedings in the Superior Court, the Justice who presided may again be called upon to determine whether judgment should be entered for defendant. This could happen because, the existing judgment for defendant having been set aside, defendant will have opportunity, before expiration of 10 days from the entry of judgment on the verdict of the jury, to file a post-verdict motion, in accordance with Rule 50(b), asking the Court to order entry of judgment n. o. v. As bearing upon whether or not such motion should be granted, or whether, alternatively, there should or should not be a new trial ordered, we note that the record shows, seemingly without dispute, that there was at least one project—the remodeling of the kitchen—for which plaintiff expected compensation and defendant, apparently knowing of plaintiff's expectations, agreed to pay.